## MRS. SOPHIA L. HICKS

*v.*

## THE STATE OF ILLINOIS.

*Opinion filed December 12, 1890.*

WATERS—*damage to mill by removal of dams.* A mill-owner who has a mill site near a State dam but has no contract with the State giving the right to use the water power has no claim against the State because of its removal of the dam.

Claimant filed her petition in this case on the 15th day of August, 1889. Petition recites in substance that the State of Illinois had heretofore constructed across the Little Wabash river a dam at or near the town of New Haven and for the purpose of aiding navigation put in a lock by reason of which there existed water power which was useful and valuable in operating machinery. That in 1869 the Board of Canal Commissioners of the State of Illinois under and by authority of the State leased the entire water power at said lock and dam situated at the town of New Haven on the Little Wabash river in the County of Gallatin together with certain adjacent lands to James Ford and A. C. Hess for the period of fifty years to begin on the 1st day of July, 1870, and was to receive as yearly rent the sum of $330 for each of the years mentioned in said lease. And that by the terms of said lease the State of Illinois was to keep said lock and dam in good repair. The said sum of $330 was to be paid for the period of ten years or

until the 1st day of July, 1880, and upon the first days of July in 1880, 1890, 1900 and 1910 the water power was to be appraised by the proper authorities of the State of Illinois and the party of the second part was to pay the appraised valuation with six per cent interest to be paid quarterly.

The petition further recites that by virtue of a mortgage given by Ford and Hess and their assigns, claimant became by certain proceedings had in the circuit court of Gallatin county the owner of the lease, rights and privileges conferred therein. That afterwards in 1887 by virtue of an act of the Legislature, the State of Illinois caused said dam to be removed so that the water power to run the mill of the claimant was entirely destroyed, whereby it is said the claimant has been damaged the sum of $12,000.

It appears from the proof that in October, 1882, the claimant had failed to pay the annual rent and that she was then owing the Canal Commissioners as back rents the sum of $495. On the 13th day of September, 1882, the treasurer of the Canal Commissioners addressed to claimant a letter in which the Canal Commissioners made the following proposition:

"If you will pay up the back water rent and release the State from the lease made with you to give you the water power free of expense to you, you to pay for any repairs on the lock and dam that may be necessary to be made."

The evidence does not disclose what the answer of Mrs. Hicks was to this letter. But on the 2d day of October it appears she sent a draft for the sum of $495, and thereupon there was drawn up and executed by the President, Secretary and Treasurer of the Board of Canal Commissioners of the State of Illinois on behalf of the State and Mrs. Hicks in her own behalf the following agreement, which is attached to the original lease under their respective seals:

"Whereas, it appears by the deed of the court of County of Gallatin and State of Illinois that Mrs. Sophia L.

Hicks became the owner of all the right, title and interest and possession of James Ford and A. C. Hess by lease to them from the Canal Commissioners dated the 2d day of December, 1869, to the premises therein described. Now, therefore, in consideration of the sum of $495 for the rent due on said lease to July 1, 1882, paid to the Canal Commissioners of the State of Illinois, they hereby release, cancel and declare null and void the lease hereinbefore mentioned to the property, rights and privileges therein granted. The said Sophia L. Hicks hereby releases the Canal Commissioners and the State of Illinois and the said Canal Commissioners hereby releases the said Sophia L. Hicks from all liability therein. This release sealed and signed in duplicate this 20th day of November, 1882."

In the testimony of Martin Kingman who was then Treasurer of the Canal Commissioners whose testimony was taken on behalf of the claimant he was asked this question: "Was it not your understanding that Mrs. Hicks was to have the dam free for the remaining time of the lease, was not that the understanding between you and the Canal Commissioners and her?" The witness answered: "As to that this agreement explains the exact understanding, that is Exhibit T." Exhibit "T" being the paper called the release before quoted. Mrs. Hicks has not been produced as a witness and there is no evidence by which it appears that a new lease was made between her and the State of Illinois. On the contrary the only evidence there is is that the contract between the claimant and the Canal Commissioners was the one before quoted. The legal effect of this contract was that claimant was released from all liability under the original lease and the State was also released; it being a cancellation of the lease and the annulling of all the rights and privileges therein granted. It further appears from the proof that in the summer of 1887 the dam was removed by authority of the State so that the water power was entirely destroyed. But it is stipulated that prior to that time the mill had been burned down

and never re-built.   Claimant has utterly failed to prove that she had any lease or other contract with the State of Illinois from the time the original lease was concelled by the agreement of date the 20th day of November, 1882. So that if the mill had not been destroyed we cannot understand upon what authority a claim against the State of Illinois can be made.   If claimant had any right to use the water power it must have been by virtue of some contract with the State.   So far as it appears by the proof there was no contract and the proposition that was made to permit her to have the use of the water power by keeping the dam in repair never was accepted.

Before we would feel authorized to find an award in favor of the claimant it must be shown by the proof that she had some lawful right in the use of the power which it is claimed that the State took away.   So far as this claimant is concerned from anything made to appear in evidence the State had a perfect right to take away the dam and destroy the water power.   And it is very clear that claimant's mill having been destroyed that she was in no way damaged, and for these reasons her claim is rejected.